IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRENTON PATE,

                              OPINION AND ORDER
            Plaintiff,
                                20-cv-942-bbc
      v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security,

            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Trenton Pate appeals a decision of the Acting Commissioner of Social

Security denying his application for supplemental security income under the Social Security

Act.  He raises two claims of error:  (1) the administrative law judge (ALJ) who denied his

application erred by interpreting medical records without the assistance of an expert; and (2)

the ALJ was not constitutionally authorized to render the decision in light of the Supreme

Court's decision in Selia Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183 (2020).

I already considered and rejected this same constitutional challenge in Kreibich v. Kijakazi,

20-cv-1045-bbc, 2/23/22 Op. and Ord., dkt. #25, 16-18, and I reject it for the same reasons

here, without further discussion.  Plaintiff's remaining challenge to the ALJ's decision is

unpersuasive, for reasons explained below.

      The following facts are drawn from the Administrative Record (AR), dkt. #14.

---

      [1]The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as
acting commissioner.

FACTS

A.  Social Security Application and Medical Background

Plaintiff Trenton Pate applied for supplemental security income on May 9, 2018, at the age of 41, alleging that he had been unable to work since December 31, 2013 because of chronic cervical spondylosis with myelopathy.  He later amended his onset date to May 9, 2018.  Plaintiff has a high school education, having earned his general equivalency diploma in 1995, and some past work as a taxi cab driver, customer service representative, and in hotel security.

Plaintiff has a long history of neck and back pain.  Before he applied for disability benefits, he underwent a cervical fusion from C3-C7 for cervical spondylosis with myelopathy.  Plaintiff also has chronic pain in the thoracic and lumbar areas of his spine, with MRI scans documenting numerous degenerative changes at multiple levels, including bulging discs and narrowing of the central spinal canal.  In November 2018, while his disability application was pending, he had more back surgery, this time at T6/T7.   In addition, he has been found to have degeneration in both knees and his left hip, with associated pain.  Finally, he is obese, with a BMI of 35.

In a function report submitted in support of his application, plaintiff asserted that he could not sit for more than 20 minutes before needing to lie down and could not stand for any length of time because of constant burning and aching in his feet.  AR 225.  He said he could lift only 15-20 pounds, walk about 1/4 mile on a good day, avoided stairs, could not tolerate kneeling, and could not reach without pain.  AR 230.  He was able to drive, go out

alone, and shop for groceries with his wife, but he engaged in few daily activities or chores around the house, although he could help fold laundry if he was sitting down.  AR 227-32.

Mila Bacall, M.D., a consultant for the state disability agency, reviewed plaintiff's claim on August 13, 2018.  Dr. Bacall gave the opinion that plaintiff was capable of performing work at the light level of exertion (lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and generally requiring a good deal of walking or standing, 20 C.F.R. § 416.967(b)), with frequent climbing of ramps and stairs, frequent climbing of ladders, ropes, or scaffolds, occasional stooping or crouching, and only occasional reaching about shoulder level due to his history of a cervical fusion with chronic pain.  AR 87-89.

After the state agency denied his claim, plaintiff requested reconsideration.  On January 28, 2019, his claim was reviewed by a second state agency physician, Dr. Marie Turner.  Dr. Turner concurred with Dr. Bacall's assessment of plaintiff's limitations.  The local disability agency again denied plaintiff's application, and plaintiff again appealed.

While awaiting his administrative hearing, plaintiff continued to receive treatment for his back, knees, and other conditions.  In early 2019, plaintiff was evaluated by Dr. Wayne Brearley for pain and numbness in his left arm and fingers that had been present for several months.  AR 762, 773.  On examination, plaintiff was able to make a fist, had no triggering or locking in any digit, and had negative results on tests for carpal tunnel syndrome, but he had positive elbow flexion tests bilaterally which produced tingling into his ring and small finger.  Electrodiagnostic testing confirmed plaintiff had ulnar entrapment

neuropathy at the left elbow.  On March 5, 2019, Dr. Brearley performed a left ulnar nerve transposition procedure.  AR 760-61.  At a follow up visit a week later, plaintiff said he had no complaints, was already sleeping better, and sensation was slightly improved.  Dr. Brearley noted that plaintiff demonstrated full range of motion of the elbow with normal intrinsic strength, and he discharged plaintiff from his care.  Brearley noted that plaintiff reported having some mild symptoms on his right hand for which surgery might be warranted if the symptoms persisted throughout the summer.  AR 769.

On July 11, 2019, plaintiff saw his back surgeon, Dr. Beaumont, for complaints of shooting pains in his trunk, spine, extremities, hip, knees and feet, along with chronic muscle tension in his neck and mid-back.  Dr. Beaumont examined plaintiff and determined that he had 5/5 motor strength in all four extremities and muscle groups, and his muscle tone and bulk were within normal limits.  Plaintiff had normal sensation, no joint swelling, and full range of motion when he flexed or extended his cervical, thoracic and lumbar spine.  Plaintiff did report mild pain in his midline cervical, thoracic and lumbar spine and Dr. Beaumont observed that he walked with a wide-based gait.  Dr. Beaumont advised plaintiff that his ongoing symptoms were not unusual, even after his surgeries, but he recommended updated imaging to see if there were any changes in plaintiff's spine.  AR 806-07.  In addition, he offered plaintiff some medications he could try for muscle relaxation and nerve pain.  AR 807.

B. <u>Administrative Hearing</u>

On October 30, 2019, plaintiff appeared at a hearing before ALJ Michael Shaefer. The ALJ heard testimony from plaintiff, who was represented by counsel, as well as from a vocational expert.  Plaintiff testified that he had constant neck and back pain that felt better only when he was lying down and that prevented him from standing for more than five minutes or sitting for more than 20 to 30 minutes before he had to stretch or change position.  AR 54-55, 57.  He said he was able to lift a gallon of milk and place it in a shopping cart, but he could not carry it any distance, and would have trouble pouring a glass of milk from a full gallon.  AR 63.   Plaintiff also said he had problems with both shoulders, his knees, and his arms from cubital tunnel syndrome.  AR 63-64.

C. <u>ALJ Decision</u>

On January 30, 2020, the ALJ issued a decision denying plaintiff's application. Applying the commissioner's five-step sequential evaluation process, 20 C.F.R. § 416.920, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity after his alleged onset date.  AR 22.  At step two, the ALJ determined that plaintiff had the following severe impairments:  disorder of the cervical spine status post fusion of the C3 through C7 vertebrae with myelomalacia (softening of the spinal cord); thoracic spine status post laminectomy at the T6/T7 level; lumbar degenerative disc disease with disc bulges and canal stenosis with radiculopathy to the lower extremities; obesity; degenerative joint disease in both knees and the left hip; and bilateral cubital tunnel syndrome.  <u>Id</u>.  At step three, the

ALJ found that these impairments, whether considered singly or combined, did not meet or medically equal the severity of any impairment that the commissioner has identified as presumptively disabling.  AR 24.

Next, the ALJ assessed plaintiff's residual functional capacity, taking into consideration his subjective complaints, the medical record, and the prior administrative findings by the state agency physicians.  AR 25-30.  The ALJ found it clear that plaintiff had various spine disorders or dysfunctions at multiple levels and other orthopedic conditions that were severe and caused significant work-related limitations.  Noting that the state agency medical consultants had concluded that plaintiff could perform work at the light exertional level with certain postural and reaching limitations, the ALJ found those opinions "not to be generally persuasive" because they were inconsistent with the medical record existing at the time of the ALJ's decision, which showed plaintiff had greater limitations.  AR 29.  Specifically, found the ALJ, plaintiff was limited to work at the sedentary level of exertion, with the following additional restrictions:

- no lifting above shoulder height with either arm;
- the ability to sit or stand at will at the workstation while remaining on task;
- occasional pushing or pulling laterally or to the front but never above shoulder height;
- occasional pushing or pulling with his legs;
- no climbing of ladders, ropes or scaffolds;
- occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling;
- frequent handling and fingering;
- no more than occasional exposure to temperature extremes or workplace hazards; and
- no fast-paced production quota or rate.

6

The ALJ was not satisfied from the totality of the evidence that more restrictions were necessary. Although he acknowledged that plaintiff's cervical, thoracic, and lumbar degenerative disc disease with myelomalacia persisted despite numerous surgical interventions, the ALJ pointed out that plaintiff "consistently had full strength, intact sensation, and normal range of motion" during numerous physical examinations. AR 30 (record citations omitted). Similarly, with respect to plaintiff's obesity and degenerative joint disease in his knees and left hip, the ALJ noted that plaintiff "consistently had a normal gait, posture, balance, and coordination with no difficulty heel and toe walking." Id. Finally, with respect to plaintiff's cubital tunnel syndrome, he found that it had "responded well to treatment and plaintiff had improved sensation with full strength and range of motion." Id.

Finding at step four of the sequential evaluation that plaintiff had no past relevant work, AR 30, the ALJ proceeded to determine at step five whether, in light of his age, education, work experience, and residual functional capacity, plaintiff was capable of performing jobs existing in significant numbers in the national economy. Relying on the vocational expert's hearing testimony in response to a hypothetical incorporating the above limitations, the ALJ found that plaintiff remained capable of performing representative occupations such as order clerk (14,253 jobs), telephone solicitor (72,250 jobs), and telephone quotation clerk (91,489 jobs).

The Appeals Council subsequently denied plaintiff's request for review, making the ALJ's decision the final decision of the commissioner.

OPINION

Plaintiff appeals the ALJ's decision, contending that the ALJ erred in finding him not disabled. (He also raises a constitutional challenge to the ALJ's authority to decide his case, but as noted at the outset of this opinion, this court has previously decided that issue adversely to plaintiff.)  The case is now before this court to determine whether the ALJ's decision is supported by substantial evidence, that is, "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination.  Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014).  In reviewing an ALJ's decision, the court applies a common-sense reading and considers the opinion as a whole.  Winsted v. Berryhill, 923 F.3d 472, 478 (7th Cir. 2019).

Plaintiff contends primarily that the ALJ's decision is not supported by substantial evidence because he drew conclusions about the medical evidence that he was not qualified to make. Specifically, argues plaintiff, the ALJ  interpreted "an MRI, the results of surgery, and medical records regarding cubit [sic] tunnel syndrome" in arriving at his residual functional assessment (RFC) assessment.  In plaintiff's view, the ALJ erred by impermissibly "playing doctor" and not seeking an updated medical opinion that considered the evidence that post-dated the state agency physicians' review.

Plaintiff is correct in saying that an ALJ may not act as his own medical expert. See,

e.g., Akin v. Berryhill, 887 F.3d 314, 317 (7th Cir. 2018) ("[W]ithout an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment."); Goins v. Colvin, 764 F.3d 677, 680 (7th Cir. 2014) ("The administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").  However, this rule does not prohibit an ALJ from independently reviewing medical records that are added to the record after the state agency conducts its review. Rather, the ALJ must consult an expert only for those records that "require medical expertise to interpret." Ross v. Berryhill, No. 18-cv-215-jdp, slip op. at 4 (W.D. Wis. Dec. 14, 2018). In Schuelke v. Saul, No. 18-CV-833-JDP, 2019 WL 2514825, at *2 (W.D. Wis. June 18, 2019), for example, Judge James Peterson found remand unnecessary because the ALJ's record citations showed that he was "not looking at the raw images and test results and analyzing them himself," but rather was relying on analyses offered by plaintiff's treating physicians.

In this case, I am not persuaded that the new evidence plaintiff cites was too technical for the ALJ to consider.  As an initial matter, plaintiff faults the ALJ for interpreting an "MRI" and the "results of surgery," but he does not identify which of the several MRI scans or surgeries in the record he means.  More important, the portion of the ALJ's opinion that plaintiff cites, AR 29, does not contain anything that purports to draw any conclusions about plaintiff's limitations from an MRI or other imaging scan or to "interpret" such studies.  Instead, in explaining why no additional limitations to the already-restrictive RFC

9

assessment were necessary, the ALJ acknowledged that "medical imaging confirmed the claimant's cervical, thoracic, and lumbar degenerative disease, with myelomalacia persisted despite repeated surgical interventions."   At the same time, however, the ALJ noted that when examined, plaintiff "consistently had full strength, intact sensation, and a normal range of motion throughout."   In other words, the ALJ found that in spite of the numerous abnormalities documented at various levels in plaintiff's spine, plaintiff's actual functioning during physical examinations was not entirely consistent with his allegations of total disability.   The ALJ took the same approach with respect to plaintiff's knee and hip degenerative joint disease and cubital tunnel syndrome, emphasizing plaintiff's demonstrated functioning during examinations as evidence of his abilities rather than attempting to divine such conclusions from the diagnostic testing and imaging scans.   AR 29.   Drawing these kinds of conclusions from the medical records was proper and did not constitute "playing doctor."   Accord Hodges v. Saul, No. 18-C-1129, 2020 WL 290582, at *10 (E.D. Wis. Jan. 21, 2020) ("Here, plaintiff cites no raw medical data the ALJ impermissibly interpreted. Rather, his argument concerns medical notes in which a treating physician discussed plaintiff's condition. Evaluating such evidence is what the ALJ is supposed to do.").

Moreover, plaintiff has not identified any specific medical evidence that arguably would support more severe limitations than the ALJ found.   He points to a July 11, 2019 note from his back surgeon, Dr. Beaumont, who advised plaintiff that it was "not unusual to have ongoing symptomatology after cervical and thoracic myelopathy, even with surgical decompression."   Br. in Supp., dkt. #20, at 29.   This statement, however, says nothing about

plaintiff's limitations, much less suggest that the ALJ was required to call a medical expert. Notably, plaintiff testified about his "ongoing symptomatology" at the administrative hearing, explaining that his neck and back always hurt, he could not stand long, could sit for at most 20-30 minutes without changing positions, and could not lift much weight.  The ALJ largely credited that testimony, limiting plaintiff to sedentary work with a sit-stand option and additional limitations on reaching, handling, and fingering.  Plaintiff also suggests the ALJ misinterpreted some of the clinical evidence related to his cubital tunnel syndrome, but again, he does not identify any specific evidence to support his suggestion that he cannot perform a job that requires him to use his hands for handling and fingering up to two-thirds of the day, as the ALJ found.  See SSR 83-10 (defining "frequent").  Certainly, nothing in the record compels such a restriction.  Delong v. Saul, 844 F. App'x 894, 900 (7th Cir. 2021) ("But even if the record could support such limitations, there is nothing that compels them.").

Finally, plaintiff accuses the ALJ of "cherry-picking," in other words, selecting for discussion only those records that support a finding of non-disability and ignoring those favorable to plaintiff.  Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010).  Having considered plaintiff's argument in light of the ALJ's decision, I cannot agree that the ALJ engaged in inappropriate cherry-picking in this case.   The ALJ discussed all of the relevant medical evidence, and plaintiff has not identified any line of evidence that the ALJ ignored that supports a finding of disability.  Deborah M. v. Saul, 994 F.3d 785, 789 (7th Cir. 2021) (ALJ need not discuss every piece of evidence in the record and is prohibited only from

ignoring an entire line of evidence that supports a finding of disability) (citations omitted); Kolar v. Berryhill, 695 Fed. Appx. 161, 161-62 (7th Cir. 2017) ("ALJs need not comment on every line of every physician's treatment notes."). The essence of his complaint is that the ALJ erred by emphasizing the minimal abnormal findings detected on physical examinations over the jargon-filled imaging reports and plaintiff's subjective complaints of pain. However, it is the ALJ's job to weigh the competing evidence, including the plaintiff's treatment notes, which nearly always contain some findings favorable to plaintiff and others that are not. Prill v. Kijakazi, 23 F. 4th 738, 750 (7th Cir. 2022) (upholding decision where ALJ emphasized medical reports showing plaintiff had normal reflexes, full strength, normal knees, and normal gait over other reports showing range-of-motion loss and diminished sensation). Here, although the ALJ emphasized numerous examinations showing that plaintiff had full strength, intact sensation, normal range of motion, and normal gait, posture, and balance, he nonetheless largely accepted plaintiff's subjective complaints and adopted a very restrictive residual functional capacity that limited plaintiff to less than a full range of sedentary work. Plaintiff has not identified any significant medical findings that the ALJ ignored, took out of context, or from which he drew patently unreasonable conclusions. At most, plaintiff has shown that a different factfinder could have weighed the evidence differently, which is not a basis for remand.

ORDER

IT IS ORDERED THAT the decision of the Acting Commissioner of Social Security

denying Trenton Pate's application for supplemental security income under the Social Security

Act is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this

case.

Entered this 15th day of March, 2022.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

13